IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
NEWNAN DIVISION

| | | |
|---|---|---|
| TODD JONES, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | CIVIL ACTION NO. |
| | : | |
| TOWER CAPITAL, LLC and | : | _____ |
| KARASS GOMEZ, | : | |
| | : | |
| Defendants. | : | |
| _____ | : | |

## **COMPLAINT**

Comes now, Todd Jones and respectfully shows as follows:

1.

This is a civil action brought pursuant to the Fair Housing Act, hereinafter 42 U.S.C. § 3601 et seq., stemming from the individual and collective violations by Tower Capital, LLC and Karass Gomez. Defendants unlawfully discriminated against Todd Jones, a person with disabilities, by refusing to make reasonable accommodations to the loft's rules, policies, practices, or services, which were necessary to afford Plaintiff an equal opportunity to use and enjoy his dwelling. Furthermore, Defendants threatened, harassed, and intimidated Plaintiff because he exercised his Fair Housing Act rights.

## JURISDICTION AND VENUE

2.

This Court has original jurisdiction pursuant to 28 U.S.C. § 1331 because this lawsuit is brought under the Fair Housing Act, 42 U.S.C. § 3601 et seq.

3.

Plaintiff Todd Jones is a resident of Carroll County and is a person with a disability who resides at 361 Lovvorn Rd, Unit 222 in Carrollton, GA 30117, commonly known as the Mandeville Mill Lofts.

4.

Defendant Tower Capital, LLC is a domestic limited liability company whose principal address is 5168 Willow Point Pkwy, Marietta, GA 30068. Defendant is subject to the jurisdiction of the Court and may be served by serving Heather Dean at the same address (hereinafter "Tower"). Defendant Tower is the owner of the apartment complex wherein Plaintiff resides.

5.

Defendant Karass Gomez is the on-site property manager of Defendant Tower and is subject to the jurisdiction of the Court. She has acted as the agent of Tower at all times alleged herein.

6.

The apartment units are dwellings within the meaning of 42 U.S.C. § 3602

(b) as as such, are subject to the anti-discrimination provisions of the FHA.

7.

As more specifically explained below, Plaintiff suffers from depression, anxiety, and post-traumatic stress disorder. Plaintiff's mental impairments substantially limit one or more of his major life activities. Accordingly, Plaintiff has a "handicap" pursuant to 42 U.S.C. § 3602 (h).

8.

In order to have equal use and enjoyment of his home, as well as to help alleviate the effects of his chronic disabilities, it is imperative that Plaintiff has the ability to live with an emotional support animal, which alleviates one or more of the identified symptoms of Plaintiff's disabilities.

9.

On or October 6, 2023, Plaintiff sought permission to bring his emotional animal support to the premises he had rented.

10.

The animal was a Rottweiler puppy then aged approximately 17 months old.

11.

Because Plaintiff was diagnosed with such mental/emotional disabilities, his licensed professional counselor recommended an emotional support animal

"to assist in coping with his diagnosed disabilities by alleviating symptoms and enhancing Plaintiff's ability to function independently."

12.

On October 11, 2023, while walking his emotional support animal, Plaintiff was approached by Defendant Gomez, who stated he couldn't have the emotional support animal and that the dog would have to be removed by the end of the next day.

13.

When Plaintiff told Defendant Gomez that he had seen Rottweilers and Pitbulls on the property, Defendant replied that we gave them 60 days to vacate.

14.

She responded "It doesn't matter, Rottweilers, Pitbulls, and aggressive dogs are not allowed on the property", ignoring the requirement of 24 C.F.R. § 9:131 entirely.

15.

She also told Plaintiff the he could not have the emotional support animal due to possible leakage problems.

16.

He was told to rid himself of his animal which he did by finding another place for the animal to stay. He was given the option of leaving the property or

moving downstairs to a unit a week later. He was told that he could not keep his emotional support animal on the second floor because the dog might urinate on the second floor which would leak into the first floor. He had just elbow surgery in August and was unable to pay movers. In addition, he was unable to move because his downstairs neighbors were too noisy and contributed to his stress and anxiety.

17.

When he inquired in writing as to why he would not have his emotional support animal, Defendants had originally responded by citing paragraph 18 of the lease which read:

> **18**. **ANIMALS**. Lessee shall keep no domestic or other animals on or about the leased premises. With special permission from Lessor, a Pet Fee of $250.00 and a $15 monthly Pet Fee per Pet will permit up to a maximum of two pets on the ground floor only. Absolutely no dogs permitted on the second floor of Mandeville Mill Lofts. IF THERE IS EVIDENCE OF A PET IN LESSEE'S APARTMENT, A $250.00 PET FINE WILL BE CHARGED TO LESSEE'S ACCOUNT. THE PET MUST BE REMOVED IMMEDIATELY AND/OR MANAGEMENT MAY ELECT TO EVICT. There will be an additional $250.00 fee per pet. Lessee agrees to obey all rules, ordinances and laws applicable in the community in which they reside and the "Pet Agreement" as posted in the Management Office. Failure to obey the rules, ordinances and laws will result in eviction, cancellation of pet permit and forfeiture of all security deposit money and Pet Fee. Lessor reserves the right to cancel pet permit at any time without any refund. Lessee shall keep pet leashed at all times when outside of lessee's unit and assume all liabilities arising from said pet.

**No guest pets allowed permanently or temporarily in Lessee/s apartment or on the premises. <u>Emotional support animals, comfort animals, and therapy pets are not service animals. A doctor's letter does not turn an animal into a service animal.</u>** No dangerous and/or aggressive dogs allowed (i.e. Rottweiler, Pit Bull, etc.)(emphasis added)

18.

Plaintiff continues to live in the premises because he cannot afford any other accommodations as they are too expensive. When Plaintiff understood that his issues with Defendants would not be quickly resolved, he sent the animal to live with his girlfriend in Detroit. He visited frequently until their marriage in July, 2024.

19.

Plaintiff asked Defendant Gomez to reconsider. She consulted with her boss but the policy did not change.

20.

Plaintiff provided Defendants with a letter from his licensed professional counselor which constituted a reliable verification of his disabilities and disability related need for the accommodation which was rejected on or about October 11, 2023.

21.

Plaintiff has been separated from his emotional support animal for more

than 12 months. Although he has made his trips to Detroit from time to time, he still struggled with severe anxiety and had an extremely diminished level of functioning.

22.

As of this date of filing, Tower has failed to grant Plaintiff's requested accommodation.

23.

The Defendants Tower Capital, LLC and Karass Gomez have interfered, coerced, and intimidated Plaintiff in the exercise of his fair housing rights.

24.

Plaintiff has been injured by Defendants discriminatory housing practices and therefore, Plaintiff is an "aggrieved person" pursuant to 42 U.S.C. § 3602 (i), FHA.

25.

 Plaintiff has retained the undersigned to represent him in this cause and have agreed to pay them a reasonable fee for their services.

## COUNT I- FAILURE TO REASONABLY ACCOMMODATE AGAINST DEFENDANTS TOWER AND GOMEZ

26.

Plaintiff realleges and incorporates by reference paragraphs 1 through 25 as if fully set forth herein.

27.

Plaintiff has a disability-related need to live with his emotional support animal.

28.

Defendants have at all times relevant to this action, had actual knowledge of Plaintiff's disabilities.

29.

Plaintiff requested, as a reasonable accommodation of Plaintiff's disabilities, a waiver of the any pet restriction that would exclude Plaintiff's assistance animal.

30.

Plaintiff provided reliable verification of his handicap and disability-related need for an accommodation.

31.

Defendants have failed to grant such an accommodation in a reasonable time, and such failure constitutes a denial of said accommodation request.

32.

Defendants' failure to modify its policies to accommodate for Plaintiff's disabilities is discriminatory and unlawful.

33.

Such actions by defendants are in total and reckless disregard of Plaintiff's

rights and show total indifference to Plaintiff's disabilities.

34.

The foregoing conduct and acts of Defendants constitute discrimination against a person in violation of 42 U.S.C. § 3604(f)(2),f)(3)(b),  by discriminating on the basis of handicap in the provision of services or facilities in connection with such dwelling.

35.

Defendants, though their conduct and acts described above, violated 42 U.S.C. § 3604(f), by refusing to make reasonable accommodations in their rules, policies, practices, or services, when such accommodations are necessary to afford Plaintiff an equal opportunity to use and enjoy his dwelling.

36.

Providing an accommodation to the rules so that Plaintiff may live in his own residence within the Mandeville Mill Lofts community with an emotional support animal would not (1) result in substantial physical damage to the property of others, (2) pose an undue financial and administrative burden; or (3) fundamentally alter the complex's rules, practices, and procedure.

37.

As a direct and proximate result of Defendants' failure to accommodate, Plaintiff suffered irreparable loss and injury including, but not limited to, mental

anguish, loss of dignity, emotional distress, humiliation, and loss of his right to equal housing opportunities regardless of disability.

38.

The discriminatory conduct and actions of Defendants were intentional, willful, and taken in blatant disregard of the Plaintiff's rights.

## COUNT II- RETALIATION IN VIOLATION OF 42 U.S.C. § 3617, AGAINST DEFENDANTS

39.

Plaintiff realleges and incorporates, by reference, paragraphs 1 through 25 as if fully set forth herein.

40.

Plaintiff requires the ability to live with his emotional support animal in order to have the same opportunity to to enjoy his dwelling at Mandeville Mill Lofts as any non-disabled resident.

41.

Defendants, through its conduct and actions described above, violated 42 U.S.C. § 3617 by coercing, intimidating, threatening, or interfering with Plaintiff in the exercise and enjoyment of his rights recognized under the FHA.

42.

Section 3617 has been interpreted to reach all practices which have the effect of interfering with the exercise of rights under federal fair housing laws.

43.

As a result of the conduct of Defendants, Plaintiff suffered irreparable loss and injury, including, but not limited to, mental anguish, loss of dignity, emotional distress, humiliation, and loss of his right to equal housing opportunities regardless of disability.

44.

The discriminatory conduct and actions of the Defendant were intentional, willful, and taken in disregard of Plaintiff's rights.

WHEREFORE, Plaintiff prays:

1) For damages and equitable relief as proven;

2) for attorney fees;

3) for punitive damages;

4) for jury trial; and

5) for such other and further relief as is just and proper.

Respectfully submitted this **10**th day of December, 2024.

GOLDBERG & CUVILLIER, P.C.

*/s/ Ralph Goldberg*

Ralph Goldberg
Ga. Bar No. 299475

2295 Parklake Dr NE, Suite 432                    *Attorney for Plaintiff*
Atlanta, Georgia 30345
Tel. (770) 670-7343; Fax: (770) 6707344
*attorneygoldberg@hotmail.com*